We'll hear argument first this morning, Case 22-1025, Gonzalez v. Trevino. Ms. Bidwell. Mr. Chief Justice, and may it please the Court, Respondents try to overread Nieves in two ways. They need to win on both attempts. Each is wrong and would lead to results this Court could not have intended. First, Respondents say Nieves' rule, designed for a representative case of in-the-field law enforcement, now insulates all government officials. Picture defense-skinned bureaucrats scouring for a crime to pin on his critics. According to Respondents, Section 1983 has nothing to say about that. Second, Respondents parse Nieves like a statute to say that it limits plaintiffs to a particular type of comparative example. To be sure, Nieves did recognize that evidence of subjective motive alone would not get a plaintiff an inference that this motive caused the adverse action. But Nieves does not blind courts to all but one type of objective evidence of causation. Respondents' position extends Nieves beyond its moorings. If the mayor in this case got in front of TV cameras and announced that he was going to have Ms. Gonzalez arrested because she challenged his authority, the existence of probable cause would make this evidence legally irrelevant. Respondents' position would also toss out of court a critic arrested for jaywalking on a remote country road, even if his town had never arrested anyone for jaywalking before, simply because he couldn't find a non-critic who jaywalked on the same spot. Nieves balanced important First Amendment concerns to protect the on-the-street first responder, making a now-or-never decision to arrest the suspect in his grasp. It did not so loosely dispense with the First Amendment interests as to give government armchair quarterbacks a free hand at the time of their choosing to punish their critics. I welcome this court's questions. In Nieves, we dealt with an arrest. Is it different here because you have a warrant process, you have an investigation? Does that break the causal link that we would have in a case just where a police officer arrests the plaintiff? No, Your Honor, it doesn't. In fact, the fact that warrant exists here helps us for two reasons. Number one, we have an analog at common law abuse of process because warrant is a classic legal process. But number two, when it comes to but-for causation, magistrates are required to look at the arrest affidavit in order to issue a warrant. So the arrest affidavit, which we say would not have been issued had it not been for retaliatory animus, is something that magistrates have to take into account, and it is a but-for causation. And as this court explained in Bostock and just this term in Murray, there could be many but-for causations. Our burden is to show that had it not been for animus, that the arrest would not have occurred. That's just one but-for causation, one but-for cause, and we meet that requirement here. You say that you use abuse of process as the analog. Have we ever used that in these retaliation cases? You didn't, but that was because there was no process. So in Lozman, you had an on-the-spot arrest. In Reichel, you had an on-the-spot arrest. In Nieves, you had an on-the-spot arrest. So this is the first time that this court actually sees a case with a warrant coming before it. And just as a common law, a plaintiff could bring a claim, even if there was a warrant, for example, in Jackson v. American Telephone Company, there was a warrant for a serious offense. It was a warrant for assault with a deadly weapon, and it was properly issued, but a plaintiff still had a cause of action because that warrant was used as a pretext for private purposes inconsistent with the exigencies of the writ in the words of common law. Your answer is quite interesting and I think informative because, as you say, if the warrant never should have been sought, it's a different kind of part four. But also, in many jurisdictions, Florida and California, judges don't make probable cause determinations, correct? When they issue warrants? According to respondents, there are some jurisdictions where there is a discretion to not issue a warrant. Right. And secondly, and some warrants are false. There are material falsehoods in a warrant. Yes, Your Honor. So you can't say as a matter of law that that can break the causation, correct? Your Honor, yes, but we were talking here about not a discretion not to issue a warrant. The point here is that magistrates are required under the Fourth Amendment to look at two things, whether there is probable cause under a warrant, and look at the oath and affirmation. They have no choice but to look at the oath and affirmation. And we know that the oath and affirmation here is the affidavit, and magistrates have no choice but to look at the affidavit. And we're saying that the affidavit would not have been obtained had it not been for animus. It's very different from retaliatory prosecutions and Hartman, because there a prosecutor can look at many different things in order to make a determination of whether to pursue the prosecution. And affidavit for a warrant can be one of those things, but it doesn't have to be that thing. So that was the problem in Hartman, where you couldn't even get enough evidence of A, but for cause, without looking into the head of the prosecutor. Here you don't have to look. You're saying that Nevis doesn't apply to anything but on the spot. I dissented in Nevis, so I probably on a clean slate would likely agree with you. But what do I do with the line in Nevis that says, that plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest? Yes, so in Nevis we're talking about the holding not extending beyond its reasoning. And the reasoning in Nevis is colored by this representative case, which is, as the government argued, in Nevis is the vast bulk of cases which are on the spot arrest cases. And we're talking about in Nevis having to evaluate police officers under objective standard of reasonableness at the time when they have to take speech into account while making a determination whether to arrest the suspect or not. I didn't dissent in Nevis. And the court's opinion in that case went out of its way to emphasize the narrowness of the exception. Your Honor, that's because Nevis talks about a vast bulk of retaliatory arrest cases. The typical retaliatory arrest case is when a police officer, like in Nevis, is patrolling the streets, having to, not on his own time, but on a suspect's time, having to respond to dangerous situations. The last thing we want is for a police officer worrying about communicating with a suspect. So that's why even under the objective evidence carve-outs, statements and motivations of a particular arresting officer are relevant at that point. Nevis covers all these cases that are important. And there is a very particular causation complexity in Nevis, in that it is impossible to untangle what a police officer is thinking at the time. As Justice O'Connor explained in her quarrels, police officers, when they're making on-the-spot decisions, themselves don't have a fully formed understanding of why what they're doing is what they're doing. So it's a very particular causal complexity that's present in a lot of cases, but it is not present in a case like this one, where you have two months to issue a warrant based on no new information. All information that was developed, developed at the time when Ms. Gonzalez took this piece of paper. Doesn't the causal complexity concern the causal complexity that would face courts, if the rule were otherwise, not causal complexity that is limited to the situation where there is what you call an on-the-spot arrest? It concerns courts, right? Because you don't want judges second-guessing what police officers are doing when they're making very difficult decisions, whether to arrest a suspect, whether to remove the suspect from the streets. And they also have to communicate to the suspect. But that exists whether or not it's an on-the-spot arrest. The causal complexity exists in all of the classic cases that Nevis was talking about. When the court was stating what it held, I don't see a reference to split-second decisions. The court says that Nevis and Wright argue that there should be no probable cause requirement. Their primary contention is that retaliatory arrest claims involve causal complexities akin to those identified in Hartman as a general matter. And later, when it's stating the holding, because there was probable cause to arrest Bartlett, his retaliatory arrest claim fails as a matter of law. I don't see reference to split-second decisions. Your Honor, on page 1725, you make reference to split-second decisions when you're explaining a particular type of causal complexity here,  and in that moment has to take speech into account to determine whether the suspect is ready to cooperate. And that very example also appears in Reichel. That very example also appears in Lozman. This is the causal complexity that is particularly difficult to untangle. Other causal complexities, and of course with prosecutors, you have your own separate problem where you need to actually talk to a prosecutor to determine what the prosecutor was thinking, and that second-guessing those decisions is also difficult. But the kind of causal complexity that's present here is very similar to the causal complexity in Mount Healthy. Mount Healthy created the burden-shifting framework to ensure that we can disentangle proper considerations of speech from improper considerations. Do you have a reason? I assume you do have a reason for stressing this argument rather than your other argument that the Fifth Circuit understood what was needed to prove that the case fell within the exception too narrowly. Your Honor, we would be happy with the objective evidence carved out as well if this court allowed objective evidence of causation to come in other than what the Fifth Circuit is talking about, which is a very specific comparator of non-arrests. But our position is that Nieves covered the vast bulk of cases, and those cases involve on-the-spot police officers having to make very difficult decisions. On the one hand, you only have mere allegations of state of mind. On the other hand, you have probable cause. And this court said that in those types of situations, we're not going to put police officers in this very uncomfortable position. Are you making this argument because you have bigger fish to fry or because you think this is the argument that's most likely to succeed in this case and serve the interests of your client? We're making this argument because Ms. Gonzalez's case clearly is not the kind of case that the court was concerned with in Nieves. This case is much more similar to Lozman on the facts, and in that case you said that Mount Healthy rules should apply. That said, Your Honor, there is a way to – we would be happy with a Fifth Circuit reversal on either one of the questions. On the argument that you have been making, I agree with you that the split-second arrest seems to be a key part of the court's reasoning, maybe not all of the court's reasoning, but some critical part of it. But I guess I wonder whether dividing the world into split-second arrest cases versus other cases is going to be a very difficult thing to do. I mean, presumably, if we look at the world of cases in which retaliatory arrest is charged, they're going to fall on a spectrum with the most split-second arrest case over here and something that looks extremely different over there and a lot of stuff in the middle. And it seems hard to me to draw that line in a way that would prove administrable, predictable. So I was wondering – yeah, respond to that. Yes, Your Honor. Our position on question presented two is that the line to be drawn is at the well-known Fourth Amendment standards to the police officers about initial lawful encounter. As long as probable cause and arrest arise within that same initial lawful encounter, it doesn't have to be split-second, Your Honor. It can be – it can last for a while. But as long as it's within this initial lawful encounter, then police arrests go underneath. But when that encounter ends, then no. And I'd like to also emphasize that within that initial lawful encounter, you can obtain a warrant, an emergency warrant, for example, or if you encounter a suspect and then you pulled up information on him and all of a sudden you see, oh, there is a warrant for previous arrest, then you could use – when you learn of the warrant and as long as you arrest within the same initial encounter, then you fall within the edifice. And those are traditional Fourth Amendment concepts that police officers are trained on. That said, Your Honor, I understand that another way to go about this, as I indicated in my opening, is to put all arrests on the same spectrum and in that case we absolutely agree with the United States government that objective evidence of causation should be allowed irrespective of its form. Counsel. Go ahead. So that second question, or the first question presented. Yes. In your brief, you mentioned that there was probable cause that Respondent Mayor Trevino violated the same statute by taking the petition home and keeping it overnight. I had no idea where that came from because you didn't have a site in the record to that. And I don't know if it was – I don't think it was in the complaint. Your Honor, sorry. Where was that from? Yeah, it is in the complaint. It's on page 110A of the complaint. I was reading the complaint too fast, so thank you. All right. Why wouldn't that be sufficient comparative evidence that someone else took this by mistake for overnight and kept it? That's exactly the problem with the Fifth Circuit's rule is that it wouldn't allow this kind of a comparator because the Fifth Circuit is parsing the rule so hyper-technically  would not be similarly situated to somebody like Ms. Gonzalez. Why is that? I don't understand that. Under the Fifth Circuit – Even accepting their rule, if some other government official did the same thing, that would seem to be useful evidence. Yes, Your Honor, but the way that the Fifth Circuit is describing that rule, just the fact that Ms. Gonzalez is a council member and Mayor Trevino is a mayor and they're serving different functions makes the mayor not similarly situated to Ms. Gonzalez. And it is important to not just limit the objective evidence to comparators because unlike equal protection cases, you could have situations with First Amendment violations where you can't point to a direct comparator. Go ahead. I was just going to say – I'll go ahead. When you refer to it as a comparator, are you referring to it in the terms of the Navis exception? Yes, we're talking about Navis exception. Well, I mean, in Navis, the whole point is we were talking about jaywalking and the point is nobody's ever arrested for jaywalking unless there's something fishy going on. And to sort of pick one person and say, well, that's an adequate comparator, I think really misses the whole point of Navis. Your Honor, if we are limiting Navis only to endemic crimes like jaywalking and mayors go under this Navis all arrests rule, then the only people who could ever be sued for violations of First Amendment rights under the objective evidence carve-out would be the police officers who are making those types of jaywalking decisions and mayors and police chiefs who are not making those kinds of difficult decisions on the spot would be exempt from it. So it is important. Well, but I mean, that's expanding the whole inquiry, right? I mean, the part about the comparators in Navis is sort of like a page and a half at the end. There's a lot more that goes before us that explains why you do not normally allow this type of inquiry. Yes, and you normally don't allow this kind of inquiry because police officers have to make decisions where they have to take speech into account very quickly. But I understand that now I'm talking about Question Presented 2 again. But with Question Presented 1, we agree with the United States government that there could be other evidence of causation that courts shouldn't be blinding themselves to. Even the Fifth Circuit's majority opinion said that we sympathize with Ms. Gonzalez, but we feel like Nieves obligates us to blind ourselves to evidence of causation like the fact that two police officers looked into Ms. Gonzalez and thought there was nothing warranting an arrest, that a prosecutor dismissed the charges, that a special detective walked a warrant under an emergency procedure designed for fleeing suspects to put away a lady in her 70s. I was just going to ask you whether on that point of looking at other evidence, would it be consistent with Nieves' exception to look at things other than comparators? Let's say that I agree with you that the Fifth Circuit required too much of the comparator, too much specificity and maybe too much statistical evidence. But isn't the other kinds of evidence that you're looking at, isn't that the kind of Mount Healthy evidence that doesn't necessarily go to the probable cause inquiry? Your Honor, that goes to the definition of objective evidence in Nieves. And what we know from Nieves on page 1722, the court specifically explains that in Mount Healthy, often motif alone is going to get you an inference of causation. And in cases like Nieves, motif alone is not going to get you an inference of causation. It has to be something beyond subjective motif. So for example here, if we were just to allege in our complaint that Mayor Trevino disliked Ms. Gonzalez because she supported his opponent, that kind of evidence of motif under Nieves is not going to qualify as objective evidence. What if she made the kind of mistake on her state tax forms that would have been prosecutable under the law? But you had all the same objective evidence, but this was, and forget about the differences between local and county and state for these purposes, but the crime is different. This is kind of a random crime that she's charged with here. But you're saying that all of this evidence of retaliatory conduct can come in, which is the Mount Healthy kind of evidence. It's not so uncommon for people to be prosecuted for cheating on their taxes. Would we be able to consider all, doesn't that swallow any of this exception? It doesn't, Your Honor, because it has to be evidence beyond subjective motif. So like the government argues, for example, the evidence of irregular procedure, walking the walk. Yeah, I'm positing that everything else that you have is there except the crime changes, and it's not kind of this random crime, you know, in random circumstances. But she has the same long-running disputes, same kind of other evidence, but the crime is more substantial. Your position is the same? Yes, our position is that the court must be allowed to look at that evidence. It doesn't mean that the court is going to say, oh, you know what, it neutralizes probable cause, and the plaintiff should be able to proceed. Our position is that the court should be allowed to look at it and then say, okay, maybe that's enough or maybe that's not enough. But the problem with the Fifth Circuit's rule is that it says you can't even look at any of that evidence and weigh it. So Wes was driving. They follow her on her way home, and she's going, you know, what is the standard, 15 miles over the speed limit? She's speeding late at night on a country road where there's no one there. Same crime doesn't matter. It's not an offense by offense standard. It's a standard of what did she do versus what kind of evidence she can provide. And whether probable cause, given that context, tends to show that the arrest would not have happened had it not been for speech. Thank you, Counsel. Justice Thomas, anything further? Justice Alito? Justice Odom? The crime's prosecuted on occasion, correct? It's just the fact pattern here that is unusual, is that? Yes, Your Honor. And I guess on the fact pattern here, how are you going to have evidence that goes one way or the other? I mean, the fact that no one's been prosecuted who allegedly stole a document from the next person at the city council meetings. So I'm just curious what you think, how this is going to proceed. I mean, you look at the video, which I have, and you could come to one conclusion about this. In that sense, it's similar to other statutes like child endangerment, for example, where you do have a serious crime, but you could have somebody like, I let my 13-year-old kid drive around the neighborhood on a bicycle, right? And if somebody is arresting me under the child endangerment statute, then it raises red flags. But if the conclusion is that someone intentionally, the evidence suggests probable cause that someone intentionally stole a document that's a government document and did it with a motive because concerns have been raised about her role in getting the signatures on the petition the day before. So she had motive, and you have the video, and we know that stealing a government document is, in fact, a crime that's prosecuted. Yes, Your Honor. Two things for that. Number one is that the statute is a general intent statute. So you don't need to be looking at her motives. Why would she take a piece of paper from one side of the dais and put it on the other side of the dais? Keep going. Sorry. But no, you're right, Your Honor. Even if you were to say that this is a crime, on the one hand, you have a probable cause for a serious crime, and on the other hand, you have evidence of retaliatory motive, that courts should be allowed to at least look at it. The problem with the Fifth Circuit's rule... I guess the concern I have here is the crime, the offense is a serious offense, the offense itself. The question is really whether the facts of this case meet it. But if you concluded that it met it, other people would be prosecuted for that, too. The fact that there hasn't been someone else prosecuted just shows that, I suppose, no one else in these circumstances has been accused of that, or they haven't found anyone. But if you intentionally stole a government document at a government proceeding... Justice Kavanaugh, we... That's not nothing. We disagree with that characterization. Our position... I understand that, but in terms of concluding that it's retaliatory, I think you have to show some evidence that she was singled out for, or under Nieves, singled out. I mean, Nieves is very specific about saying you need to identify similarly situated individuals who were not engaged in the same sort of protected speech, had not been arrested. And under the Seventh Circuit's rule, we would be able to point to the mayor, and he would be a similarly situated individual. And also under the Seventh Circuit's rule, we would be able to point to the fact that two police officers independently looked into Ms. Gonzalez and decided there was nothing there. That the prosecutor looked into Ms. Gonzalez and decided not to pursue charges. And it also gets to this idea of how many crimes we have on the books today. It would be one thing if you had 70 crimes. It's another thing when you have 70 million crimes. And they are written in a broad manner. Right, but stealing something intentionally, if that's what happened, that's... There is probable cause to say that she concealed a government record because she took a piece of paper from one side of the dais and moved it to another side of the dais. As Judge Oldham explained in his defense, this kind of a crime is akin to letting my kid ride a bicycle around the neighborhood, but being charged under or being arrested for child endangerment. Okay, thank you. Justice Baird? Justice Jackson? So I guess I'm wondering whether you're asking for what seems to be a reasonable extension of the Nevis exception. Because as I read it, I mean the Fifth Circuit is not sort of coming out of nowhere. It does say objective evidence that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protective speech had not been. And I get that that would capture your Mare scenario, that evidence. I'm not sure that applying that in the way that it seems to be articulated here would capture the evidence of the two other prosecutors deciding not to prosecute, etc., etc. So are you asking for sort of an extension of the Nevis exception to cover that kind of evidence as well? Your Honor, we're not asking for an extension because we think that Nevis specifically articulates what the exception is concerned with. And it's a situation where probable cause will not tend to show that the arrest would not have happened had it not been for speech. And in that sense, objective evidence, as the government argues, objective evidence of causation irrespective of its form should be allowed to come in. And that's also the Seventh Circuit's point. View of it. All right. So if we take your view of it, that we don't limit it to just that language, but we're looking at what was Nevis really about with respect to the exception, and therefore allow all the kinds of evidence you're talking about, many of the respondents' arguments suggest that this is going to be opening the floodgates to all sorts of vexatious litigation. So maybe you can explain why that wouldn't be the case. Well, one of the reasons it wouldn't be the case is because of Chief Justice Rehnquist's dissent in Crawford L. where, for him, one way to limit the floodgates was to introduce this very requirement of objective, that objective evidence of causation is something that makes it very difficult for plaintiffs to be able to meet that standard. So when you have probable cause on one side of the ledger, when you have warrant on one side of the ledger, then the kind of objective evidence of causation that you would have to present would have to be strong enough that a court would say that evidence of causation is a better explainer of what happened here than evidence of probable cause. Thank you. Thank you, Counsel. Ms. Reese? Mr. Chief Justice, and may it please the Court, the first question presented is narrow, asking only what types of evidence can be used to satisfy the Nevis exception. The Court need only address that discrete question, and it should hold that the exception can be satisfied by various types of evidence that support the ultimate inference Nevis required, that similarly situated persons who did not engage in First Amendment activity would not have been arrested. Regardless of its form, evidence that supports that inference does what Nevis requires. It addresses Hartman's causal concern by helping to establish that non-retaliatory grounds were in fact insufficient to provoke the adverse consequences. The Fifth Circuit therefore applies the wrong legal standard by effectively requiring Petitioner to show direct evidence of comparators or empirical statistics. Respondents would eliminate the Nevis exception altogether for arrests involving warrants. That unpreserved argument does not appear to have been accepted by any court of appeals and would draw unwarranted distinction. On the flip side, Petitioner's approach to both questions presented would require the Court to essentially overrule Nevis and would draw lines between different categories of arrests that have no basis in the concerns that motivated the general no probable cause rule. I welcome the Court's questions. What would that evidence look like? The evidence that we think should come in? So we think that it's any objective evidence that supports the ultimate inference that the Court required to satisfy the Nevis exception. What is that? So I think it can be a variety of different types of evidence in different situations. So for example, it could be a pattern of arrest for a behavior far afield of a plaintiff. It could be common sense propositions or inferences like jaywalking never happens. It could be officers' employment of an unusual, irregular, or unnecessarily onerous arrest procedure, timing events leading up to arrests, and that an arrest was falsely documented. But I do think it's important that we don't think any of that evidence is necessarily sufficient in any particular case because the ultimate inference the evidence needs to support is that there would have been similarly situated people who were not in fact arrested. What would that look like in this case? So we haven't taken a position on the ultimate question in this case because we do think the Court just granted the question about the form of evidence, not whether the quantum of evidence here satisfies that or what the quantum of evidence is generally. That being said, some types of evidence that are relevant in this case, I do think, are petitioner's evidence that arrests for behavior under the statute were for behavior far afield of hers. The nature of the crime itself, it's a low-level misdemeanor crime that can be satisfied just by the general intent of moving the document. I think the irregular arrest procedures here are relevant as well. The Court went through a long list of reasons why probable cause should generally, as we put it, defeat a retaliation claim. And we described the qualification there as a narrow one. You had a long list of the type of evidence that should come in to defeat the retaliation claim. That seems to me to be inconsistent with the notion of a very strong general rule that had been well-established and a very narrow exception. I respectfully disagree because I think that evidence still has to ultimately go to show that a similarly situated person wouldn't have been arrested. And I don't think the form of evidence, as long as it's objective, whether that's direct statistical comparators or other evidence that supports an inference that others wouldn't have been arrested, changes the concerns that this Court identified in Nieves when it comes to the general probable cause rule. It seems to me that your list suggests that this is a normal, typical question. There's a debate about it. We're going to have evidence on both sides of all sorts of different points and then figure it out. And that doesn't seem to me to take into account the reasons that we have the general rule that probable cause is enough. It just seems to take it in the same area as any disputed issue of fact in general. What sort of stuff would not be admissible as evidence if you think the probable cause requirement should be defeated? Well, again, I think because the ultimate inference is the similarly situated inquiry, which is the way I think we actually differ from petitioners on the first question presented, I think that this sort of evidence, it's going to depend on the case, whether it supports that inference. Just a stand-alone allegation that I was arrested in a different way. Yeah, but I'm trying to get out of it. You seem to say you're not expanding the exception. But give me the type of evidence that would be pertinent on the question, but you would say, oh, that doesn't come in because we're concerned about maintaining the general rule. So I think some of the evidence petitioner has relied on here, so evidence about other council members who aren't defendants here, and using that evidence when it's not part of a Monell pattern or practice claim, doesn't either support the similarly situated inference, but it might be able to come in if you were just doing some sort of Mount Healthy analysis, like petitioners requesting as part of the second question presented. Let me ask you about the other question presented. You have a footnote, footnote six, about abusive process, and I'm struggling to understand why abusive process wouldn't relevantly inform our understanding of Section 1983, if one believes that abusive process was a recognized tort at the time of the statute's adoption, which I think the evidence tends to support. So I understand in Nieves that that may not have been relevant, in part because it was a warrantless arrest, so there was no process involved, and also in part because, frankly, Mr. Nieves' complaint didn't allege an ulterior motive that might satisfy an abusive process claim. He didn't have an allegation that he was being extorted in the way that we have that kind of allegation here. Why should the court turn a blind eye to abusive process as a common law tort analog, which we usually look to common law tort analogs when interpreting 1983? So three points on that, Justice Gorsuch. First is I do think that petitioner chose to plead her claim here as a retaliatory arrest claim, and this court did hold in Nieves that... Yes, but when we look at whether it's retaliation in violation of the First Amendment or any other amendment, we look to the common law analogs, and here is an obvious one. Well, I think that Nieves largely foreclosed that because... Well, that's what I'm asking you. Do you think it really foreclosed it? Because it didn't mention it, and again, it wasn't pled, and there was no process, and there wasn't the kind of extortion that's alleged here. So there are lots of reasons why Nieves didn't grapple with this question, but here we are. Let me start with Nieves and then kind of turn to the merits of that question. The reason why we think the Nieves court was aware of this is because the court in Hartman discussed abusive process, declined to rely on it. The government in its Nieves brief, page 10, footnote 2, discussed abusive process and explained why it wasn't most relevant. Again, I agree with you. It wasn't relevant in Hartman, and it wasn't relevant in Nieves, but why isn't it relevant here? So a couple of points on that. First of all, I think if you look at an abusive process claim, the kind of prototypical claim was use of process to extort money or property. Or any other kind of favor or thing, and why? It wasn't limited to property and money. Often it was, you're right, but I've actually litigated abusive process claims, and the point is the process, yes, it was supported, and it was properly done. The magistrate here signed off on it, but it was being done for an ulterior purpose, and I think that's the allegation here. I think, though, that the ordering of the claim doesn't fit on as well as a malicious prosecution or false arrest claim, so here the retaliatory arrest was in retaliation for her prior First Amendment conduct, and that's why you have to plead the plea to retaliate. A false arrest or a malicious prosecution claim says there's no probable cause. That's at the heart of it. The arrest couldn't lawfully be made. Here she's saying, yeah, the arrest could be lawfully made, but it wasn't being made for the true reasons that the writ was designed for or the law was designed for. It was being done for an ulterior purpose to push me out of the political process and silence me. To be fair, she pleaded to retaliate her arrest claim, so that's arrest in retaliation for her prior conduct. She's brought in allegations that there was also future intent, but that's not part of the claim itself. And second, I think it would be odd for the court— Well, if I read it differently, then what? So I think, just stepping back a little bit, I think it would be irregular in light of the rationales this court has identified to carve off the three sets of claims in different ways that I think are at issue here. So first, there's retaliatory prosecution. The general no probable cause bar applies. There's also split-second arrest. Petitioner agrees the general no probable cause rule applies there. In the middle, the court would look to a different analogy, and I don't think that analogy is justified by the rationales this court has articulated for the no probable cause rule, which are that probable cause will always be relevant and readily available, and evidence of it, or lack thereof. And second, that there may be causal difficulties caused by multiple actors or the propriety of considering speech in certain situations. And this category of a more deliberative arrest that petitioner is carving out isn't different on those kind of key issues that motivated the exception. So that's why I think the court should continue to look to malicious prosecution and false arrest. Thank you, Counsel. Justice Thomas? Justice Alito? What would you say in response to the questions that Justice Kavanaugh was asking about the situation where there are plenty of arrests under a particular provision, but in the case at hand, the factual circumstances are quite unusual, and there is no evidence that anybody has been arrested for committing the crime in that particular way. How do you think a court should deal with that? That evidence standing alone is not going to be enough to demonstrate that there were similarly situated people who engaged in the same sort of activity who were not arrested. So I think that evidence could potentially be relevant if there are other reasons to infer that there were in fact similarly situated people and they were not arrested, but the novelty of a crime alone is not enough to make the similarly situated showing. I think there are a lot of good reasons for that. We articulate some in our brief, but that includes the fact that just because someone figures out a new way to engage in criminal activity doesn't suggest there's anything nefarious by a government prosecuting that. Just so there. If I'm understanding you right, on the first question presented, your position is that the Fifth Circuit is the only circuit that's demanding a specific kind of comparison-based evidence, correct? That's correct. We think the Fifth Circuit applied too strict a form of evidence requirement. And if I remember correctly, the Fifth Circuit blamed it on the language of Nieves and said that Nieves compelled this conclusion, but that they were sympathetic that Judge Oldham's view of it being a little wider than they're applying it is consistent with the Ninth and Seventh Circuit, correct? That's correct, yes. I'm not sure that we agree with the Fifth Circuit. We don't take our position to be any expansion on Nieves. Exactly, but the Ninth and Seventh Circuit view it consistently with your view today, correct? That's correct, yes. Have you seen an explosion of litigation with Lozman-type retaliatory arrest exceptions? We haven't done a statistical analysis on that. Obviously, Nieves was not decided very long ago. That being said, I think if you look at the decisions in the Seventh and Ninth Circuits, such as the Valentin decision in the Ninth Circuit, they very carefully looked at the types of evidence we've discussed, but ultimately looked at that inference of whether that suggests that similarly situated persons would not have been arrested. So I do think that they struck the balance between applying the Nieves rule but just allowing a broader range of evidence to satisfy it than the Fifth Circuit did below. Thank you. Justice Kagan? So if I could talk about this question of what kind of evidence should come in under the Nieves exception, and let's sort of think about three sets of evidence. So one, I think nobody would say that an allegation of a subjective state of mind on the police officer is going to get you past the probable cause bar. Is that correct? That's correct. That's an obvious implication. I mean, not just an implication. Nieves makes that quite clear. Now on the other side of the spectrum, you have this quite obviously comparative evidence. The Fifth Circuit seems to have a very narrow view of what that was, like you have to point to a particular person who wasn't arrested. But let's expand that a little bit more and say, well, that would be a little bit nutty. I mean, if you come in and you say, nobody's ever been arrested for that, I can't point to a particular person, but look, nobody's ever been arrested for that, that should count too, right? So, you know, that's all like very comparative stuff, right? So in the middle, and I guess this is where I thought your brief was interesting, is objective evidence that you might take to support an inference as to comparisons with other people, but that is not on its face very comparative in nature. And I'll just read you some of what you said in your brief. The timing of and events leading up to a plaintiff's arrest, the history of the defendant's interactions with the plaintiffs, the fact that officers falsely documented the arrest, maybe the most comparative of these is the employment of an unusual, irregular, or unnecessarily onerous arrest procedure. So all of these, you can understand how somebody could argue from them to a comparative statement that another person who didn't engage in this kind of speech activity wouldn't have been treated the same way, but it is a little bit of an inferential jump. And so I guess my long-winded question is, why do you put those sorts of statements in the bucket that should be able to come in to get past the probable cause bar, rather than lump them with allegations of subjective intent on the part of the police officer? I think it makes sense to put them in the bucket of things that courts can consider. First of all, because courts generally aren't limited in the form of evidence they can rely on to consider inferences. And I think in particular here, any objective evidence is going to go to addressing Hartman's causal concerns by helping to establish that non-retaliatory grounds were in fact insufficient to provoke adverse consequences. So if, for example, the method of arrest is entirely unique, let's say it's the facts of this case, and we also know that no one has ever been arrested and sat in jail for engaging in a misdemeanor. That does support the inference that not only similarly situated people were not arrested, but also that this person was really treated differently from similarly situated persons across the board. Now again, that evidence alone isn't enough, but it can help tell the whole story of a particular arrest and help support the conclusion that the Nieves exception is satisfied. Thank you. Ms. Gorsuch? Just to be clear, we're not talking about the causation standard under the First Amendment itself, right? We're talking about this Court's gloss on what the causation requirement is statutorily under 1983, right? That's correct. We read Nieves and Hartman to be elements of the clauses of action, not elements of the First Amendment. So the First Amendment may well be broader than this. It's just that this Court has said for purposes of a statute, we're going to require more specific kinds of evidence, right? That's absolutely correct, and that's why we argued in our brief that the Court should actually make that clear at some point in one of these cases. And causation, normally a plaintiff can point to any evidence to support an inference of causation, right? That's correct. Any relevant evidence that's otherwise admissible, yes. And so it's this gloss that we're dealing with that we created. And then at the end of the day, in terms of the parade of horribles, there's always qualified immunity, which we haven't even addressed, that's layered on top of all of this that a government official could invoke. That's correct. Obviously, qualified immunity isn't directly at issue in this case before this Court. No, we haven't even gotten to that yet, right? Right. You have to jump through this hoop before you get to that hoop, right? That's correct, but I actually have an asterisk on that. Justice Gorsuch, if this requirement is a part of the cause of action, not a part of the First Amendment requirement, as a general matter, an official is not going to be entitled to qualified immunity based on a mistake about the scope of the cause of action. Well, you've got clearly established law, though, you know, and you've got to be able to point to something, right? So I think if the Court were to – that's a reason we think the Court could potentially clarify. Because the second part of qualified immunity is still to deal with. Yes, Justice Gorsuch. Justice Kavanaugh. I think what you're looking for, right, is evidence that suggests that other people who did what this person is alleged to have done wouldn't have been arrested and that this person was arrested because of her political viewpoint or particular speech or political expressive activities. Does that sound right so far? That's correct. I think the second part would come in more under the Mt. Healthy inquiry after you get through the similarly situated inquiry. But, yes, that's correct, Justice. And I guess – sorry to focus on the facts here, but this is an unusual case to be analyzing this in the abstract, it seems to me, because if someone unintentionally ended up with documents that were not theirs and were prosecuted for some crime that was never prosecuted and it was like, yeah, you did it by accident, but we're going to prosecute you anyway. Okay, that sounds highly unusual and you can't find other people who would have done that. But just thinking about inferences, you use the word inferences a lot. If you have probable cause, and I'm not saying it exists here or not, if you have probable cause that someone intentionally stole government documents, intentionally, knowingly, intentionally, to impair a government investigation or proceeding, that's going to be prosecuted all the time, right? I agree with that, Justice Kavanaugh. Exactly. The distinction here, though, is we agree with Petitioner that the only intent required is general intent. So the only intent the government had to prove here was that she picked up the document and intentionally moved it. So I think because of that, that's why this was prosecuted as a misdemeanor. And if you want evidence for why it is just general intent, you can look at Texas Penal Code 6.03, you can look at the treatise that Petitioner cites in her reply. And so I do think that's why this particular case does fit within the heartland of the Nieves exception. That being said, the government isn't opposed if the court were to draw a serious, non-serious crime distinction, which probably would be along a misdemeanor felony line. It just seems that this case clearly falls in the misdemeanor bucket. And are you looking at the – I mean, now we're going back to the law in question rather than the facts, but I think the idea was someone who committed these – who engaged in these activities would not be prosecuted but for their speech. And if they – they're prosecuted under the general intent, but if their activities – if the police officer believes this was done to prevent inquiries into which names were on the petition because there were allegations the day before that she had coerced or misled people into signing the petition, again, I'm not taking a position on any of that. I mean, I don't know that you wouldn't be – the inference would be you would be prosecuted under some statute, even if it is, quote, a general intent statute. Isn't that right? So I think – and again, I think this is counterfactual here potentially, but I agree that if the facts are more serious than the potential charge, I think the relevant comparator would be other similarly situated persons and whether there was probable cause. Who engaged in those facts. Who engaged in the same activity, yes. I do think that's the relevant inquiry. Just because someone is charged with a lower crime or arrested for a lower crime doesn't kind of change the analysis as far as – Right. And the whole case here – yeah. Okay. Thank you. I'd like to pick up there. So how important is the seriousness of the crime? I said before, and I think Justice Kavanaugh is right to be more precise about this, so this is kind of a random crime, but it's random because of the facts of the case and it was a misdemeanor. So, you know, jaywalking, the example in Nieves for the exception. I mean, jaywalking, I think everybody agrees that absent some circumstance, you know, where you endangered someone or darted in front of a car, jaywalking is not serious. Does it matter at all? I mean, do we look at the facts? Do we look at the crime? And before we even get into the Nieves exception and looking at the kind of evidence that you're proposing, do we do some sort of threshold analysis about whether the facts or the crime or both are actually serious? So I think under the Nieves exception, I do think a similarly situated person would have been arrested. I don't think it necessarily matters what crime or what level of seriousness of crime was listed on the warrant or was listed on, you know, the officer's notes. So I do think it's a conduct-based comparison. I don't think the court needs to address the seriousness question here necessarily because this is a misdemeanor crime, but we would have no objection to the court drawing a felony misdemeanor distinction and just saying that Nieves doesn't apply outside of that, and I think that's because, and that could be appropriate, because Nieves did seem to be concerned about endemic crimes that are infrequently prosecuted where there's a large amount of discretion. And from the federal government's perspective, where we see the most types of problematic and potentially retaliatory arrests are in situations like unlawful assembly, blocking a sidewalk, disorderly conduct, trespassing on government property. And those things tend to be low-level endemic offenses where there's a lot of discretion. That's true, although the line between misdemeanor and felony is drawn in different places and different jurisdictions, and it would be pretty hard, I think, to hold that as a consistent line. So when you say similarly situated, you're saying that you look both at conduct and at crime, but the federal government doesn't have a position about whether we look at the seriousness of the crime. So as far as the seriousness of the crime goes, even if you don't— Felony versus misdemeanor or whatever. Yeah, I think if you decide not to draw some sort of strong line between those two, I think how that would generally play out is when you have a felony or a more serious crime, there's just going to be a presumption that people are regularly prosecuted for that, and it's going to be very easy to find examples of people who engaged in the same conduct and were, in fact, prosecuted but didn't have the same speech. Thank you. Justice Jackson? So I guess I'm going back to Justice Kagan's helpful dynamic in terms of figuring out the types of evidence, and I'm still a little bit confused about the government's position that really what is at issue here is a determination of the treatment of similarly situated persons, that that provides, I think you say in your brief, the compelling objective basis for inferring that the arrest was retaliatory. But then you seem to accept numbers or different kinds of forms of evidence that don't, in my view, go directly to determining that a similarly situated person was treated differently. So I guess Justice Kagan put it that there are sort of several inferences to get you from certain kinds of evidence to a similarly situated person. So can you say more about why, for example, the government wouldn't be insisting that the plaintiff in this case at least say something about this having happened before, that there are similarly situated people? I mean, I find it difficult, and I'm not saying you're wrong. I'm just trying to puzzle it out. You say, you know, evidence that an arrest has never happened before. I mean, surely that's common sense. But I guess I'm trying to understand how unless we have evidence that this same kind of thing happened before, we can take that evidence and say that's an inference of the kind that you're trying to draw. So I think you're either going to need to have evidence or you're going to need to have an inference that similarly situated people engaged in the same sort of activity and were not arrested. We just don't think there needs to be direct evidence of that. And I think, for example— If your only evidence was that this never happened before, would you also require a plaintiff to show— I mean, the arrest, excuse me, never happened before. No one was arrested for this conduct. Would you also require the plaintiff to show that other people had engaged in this conduct? So the plaintiff would either need to show that or would need to not directly show that, not have direct evidence of that, but a plaintiff could have evidence that supports that inference or there could be a common sense inference. And I think maybe the jaywalking example is helpful. There might be a situation in which you have evidence no one's ever been arrested for jaywalking before. You don't have direct evidence that anyone has jaywalked out this corner in front of a police officer. But that might be something that there could be an inference for in these sort of low-level endemic crimes. All right. Thank you. Thank you, Counsel. Ms. Black? Thank you, Mr. Chief Justice, and may it please the Court. Throughout history, probable cause has foreclosed retaliatory arrest suits. Nieves created one narrow exception for warrantless arrests where officers typically look away or give warnings or tickets. This Court should not blow up that exception. First, this case involves a warrant. Warrants do not entail the boundless officer discretion that justified the Nieves exception in the first place. Warrants also deter abuse by inviting judicial scrutiny, and warrants add intervening actors that make it even less likely that animus caused the arrest. At a minimum, warrants are the last place to widen the Nieves exception. Second, this case involves theft. For crimes such as theft, where officers typically arrest, the justification for the Nieves exception just doesn't exist. It is only where officers rarely arrest that probable cause loses its probative force. Extending the exception to everything from theft to terrorism just invites questions about why police arrested some people and not others. Third, petitioner never alleged comparators, i.e., others who engaged in similar conduct but were not arrested. Only comparators rule out the probative value of probable cause. Petitioner and the government would allow anyone to sue with objective evidence of animus or using so-called negative evidence, the absence of arrest for similar conduct. But then every arrest invites a lawsuit. Every case gets passed a motion to dismiss and on to discovery and before a jury. Plaintiffs will always contest the police version of events and then point to the lack of arrest records for their reframed conduct. Take this case. The complaint alleges petitioner accidentally misplaced papers and denies that petitioner acted intentionally. But the warrant application recounts a case of serious intentional theft. Now, petitioner was free to challenge probable cause, but instead she admitted it. And if you accept petitioner's gamesmanship, those arrested for domestic violence will claim the victim just slipped. Those arrested for threats will claim they were just joking and those arrested for embezzlement will claim they just accidentally misplaced the funds. I welcome questions. I, of course, agreed with you, Nieves, with what you just said, but we've crossed that bridge. And you've heard the discussion of what kind of evidence would be necessary to counter the causal connection or to change it, to overcome probable cause determination or the warrant. What would be some of your responses to some of the arguments that you have heard for the type of evidence? What I'm concerned, interested in, for example, is there are rare cases where crimes are rarely punished and you could have the exact same argument. What kind of evidence would you use in a case like that to counter the probable cause? Yeah, I think if the way I read, Nieves, as the narrow exception that the court said it was, it should be easy to plead the exception because it's talking about cases where people actually engage in the conduct, but officers give a ticket or a citation or a warning or they look away. And you just don't have that kind of case. The court was talking about jaywalking, dog off a leash, eating on the subway, not wearing a seatbelt. Not cases where the assumption is when there is probable cause, if officers typically arrest, and I just think that that is per se true with theft, and it's the opposite presumption is true with crimes where you can get a ticket. No one gets a ticket for murder. No one gets a ticket for assault. No one gets a ticket or a citation for theft. That's not a thing. Well, I'm not going to say I have agreed with you again, but that's not where we are now. And what I'm trying to get you to engage with is some of the back and forth we've had so far. Okay, so if we're going to take it to any crime goes and misdemeanors in Texas are punishable up to a year in jail, you will have every case where the plaintiff, like in this case, says you have to accept my allegations as true, which I did nothing wrong. And then the officers, thank God we here had a warrant, but if there wasn't a warrant, you will not hear the officer's version of events. The only reason you heard the officer's side of the story as in the evidence was you had a summary judgment record. That complaint alleges a bone-chilling case of police brutality that made me not want to ever step foot in Alaska. You never even heard the officer's side until he was deposed. You had massive discovery. You had sensitive police documents. And every case, very few people get arrested and think, oh, well, yeah, I was caught, and I still think there was retaliation. Every drug case? It wasn't my drugs. Counselor, you're characterizing this as a theft, and the assumption of Justice Kavanaugh was the same. But the government's pointing out, and I think rightly, that this wasn't charged as a theft, because theft would have a defense of there was no intention to permanently deprive someone. There's a whole series of things. The crime that was charged here was a crime of moving a document, and all it required was the general intent to move it. The defense was I did it accidentally. She may have been defeated in that or not, but the point is that there are charges brought for stealing government documents, and there are charges that are brought for moving government documents, and that's never happened in a situation like this. So my point is you're building it up on the facts of the case to characterize it as something that wasn't the charge. And I think what the government is saying is for this kind of misdemeanor that was charged, it doesn't happen when there's a dispute about whether something was moved intentionally or not. I'd go a step further, having been a former prosecutor. Even if it was intentional, we probably wouldn't have brought the charges, because no harm, no foul, no harm. And in fact, two police officers wouldn't charge it. One public prosecutor didn't charge it. In the end, even with a warrant, the charges were dropped. This is just not the kind of situation like in the jaywalking example when there's a dispute about things like this, people are not arrested in this way. That's exactly what I think their claim is. You're characterizing it differently, but that's the bottom line of this claim. So at least four responses. One, there was no charge here. There was an arrest. And the arrest warrant three times says the opposite of what you just said. It said, the video clearly shows Gonzalez intentionally concealing and removing a petition from custody. Page 49, there's no mistake. Gonzalez knows what she's holding. She's holding the petition. At warrant page 53, I'm charging her for meeting the elements of the statute because she had a desire to intentionally remove and impair the availability of this document from city custody. Now, on the statute, I'm shocked by the government because the government has its own parallel, 18 U.S.C. 2071, that is the same tampering statute. All states have a tampering statute, and they all read the same way with intent. Now, they cite the treatise, but the treatise she didn't cite was the section on intent, and it said you have to have a conscious desire to remove the documents from the government. If you look at all six provisions of that statute, it's wrongdoing, all of it. It is inconceivable that a statute called tampering and that has all bad acts, this one little act was, oh, here, I just committed theft because I just moved something for the other. It's just not credible. But if you agree with her and the government that I am wrong, then this should have been an easy case for her to allege a comparator. But she didn't even allege Mayor Trevino was a comparator because she alleged no comparators. Now, there's been talk about the Fifth Circuit, and I just want to defend. What do you do with the fact that it's in her complaint? She gave us a page site. She gave you a page site that mentioned the mayor had the document between one night and the next. The comparator allegation is at 117, and it's an absence of one. And that's what the district court relied on, and it's what the Fifth Circuit reversed, that her complaint alleges, again, it's 117A, that no one has been ever arrested for trying to take a nonbinding and expressive document. Now, when you get it to that level of specificity that no one took, you know, the feathers from the Smithsonian, then the Fifth Circuit said naturally, well, who steals feathers from the Smithsonian? And the Fifth Circuit said on pages 29 and 30 you have to have some comparative evidence. But she could have, but we know why she didn't. We know why she didn't allege comparators because it would have been preposterous to say, Yeah, public officials secret away government documents to avoid, you know, checking on things like forgery and lying, but no one ever gets arrested. She didn't allege that. Isn't our goal here to try to assess whether or not she should have had to allege that? So I see you talking about this at a certain level of specificity, and I'm trying to understand what your view is of what she should have said in order to satisfy the rule and whether the rule should be as the Fifth Circuit lays it out. So the plaintiff has two choices, and she could have had two choices here. She could have at least said, I'll allege a comparator. This statute, I'm not going to challenge probable cause or this statute, but it covers completely innocent conduct, and I'm going to allege people always engage in innocent conduct and don't get arrested. And then you and I or we would have been having a fight with, well, can you look at the comparators from the complaint or shouldn't you look at the comparators? So for you, it's not enough to say no one has ever been arrested for doing this kind of thing before? No, because it's so much easier to say, and people do it. Here are the reasons why the government said this, but they forgot what they said on page 20 of their brief. Hold on. I just want to put a pin in that, if I might. So you're saying that an allegation that the statute's never been enforced against anyone, but it was against me because of my First Amendment expression is not enough to state a claim? Absolutely not, and the reason is why the government says this on page 20 of their brief. How many statutes are there on the books these days, many of which are hardly ever enforced? Last I read, there were over 300,000 federal crimes, counting statutes and regulations. I can't imagine how many there are at the state and local level, and you're saying they can all sit there unused, except for one person who alleges that I was the only person in America who's ever been prosecuted for this because I dared express a view protected by the First Amendment, and that's not actionable? Well, I'm going to try to convince you otherwise, but I have to do that. Yeah, good luck. Well, let me just try this. If it's never been enforced, then just say people do it. If there's a statute that makes it illegal to commit adultery, it's not that hard to say, I've committed adultery, or my neighbor's committed adultery. Let's just put it, and again, the government tells you on page 20 of its brief, the fact that the statute has never been enforced could prove little or nothing, and here are four reasons why. Maybe no one commits the crime. Maybe you don't see carjacking in Amish country. Maybe you don't see people stealing boats in Death Valley. Maybe the crime itself is unusual. Maybe it's incest or cannibalism. All of which the court could take into consideration in doing a causation analysis, if you really think that there's a case in Amish country, and there's no carjacking, the court can say that evidence is not enough. But you're saying that the court can't even look at that evidence, the fact that a crime has never been prosecuted, ever, except for against a person who alleges a First Amendment violation. I have to turn a blind eye to that. I can't even look at it. That's your argument. No, my argument is it's alone insufficient. Of course you can look at it, and of course it's highly relevant. Well, hold on. You can look at it, and it is highly relevant? If you have a simple allegation that there is a person on the planet who has done that conduct. A named person on the planet? No. Just a person on the planet? I think you can have news articles that people jaywalk. You can have news articles that people eat on the subway. You can have, I mean, generally I thought, again, I didn't write Nieves, but I thought Nieves was talking about crimes where people were not embarrassed to admit that they did them. And it wouldn't be that hard to say, I can't believe I was arrested for, you know, crossing an intersection. And no, you do not have to say the same intersection. The Fifth Circuit understood this rule to say you have to show a person within this jurisdiction who has engaged in this conduct before and was not arrested. And I think what Justice Gorsuch is saying is that that has got to be wrong. Whatever else you want to put into this bucket, you should be able to say, they've never charged somebody with this kind of crime before, and I don't have to go find a person who has engaged in the same conduct. And again, we're going to get into a dispute about if you accept the warrant, if you accept the plaintiff's complaint, the officer will always lose, and the officer can never arrest, and the officer literally can never arrest without worrying about getting sued. Except I thought that was the point of qualified immunity. This was the other characterization that I was going to ask you about, which is you say every case goes forward, we never hear the officer's side of the story, but, I mean, isn't that what qualified immunity does? Well, it was denied here. It was already denied because the court said, the district court said, Nieves created an exception, and you adequately pled the exception. So it was actually denied. And Judge Oldham said the Fifth Circuit reversed on the First Amendment issue. Judge Oldham said he's not so sure how he would rule on qualified immunity. But we're happy to win on qualified immunity, but we actually lost it here, and the court in Nieves could have done the same thing. Generally, you want to keep it so officers aren't afraid of being sued. All we do is vacate and remand. Well, I hope you don't force on qualified immunity. That would be nutty just to vacate and remand because you just want us to lose. But you still have to satisfy, to go to Justice Jackson's point, I don't think it would be the case that anybody who was arrested could make this charge and then get onto discovery because then you'd still have to survive a motion to dismiss on the Mount Healthy inferences, right? I mean, she has, if you put aside the probable cause, the no probable cause requirement, if you put that aside, I mean, she has all of this evidence for retaliation. Not everybody who's arrested is going to have the kind of evidence she has on that score. And that will knock out cases. I disagree, especially given the type of evidence she alleges. I mean, the stuff she's alleging doesn't have any citation. It just says she showed up and somehow the DA would have entered a warrant into a satellite booking process. I have no idea what she's talking about. The Fifth Circuit asked her specifically, was there any requirement that a police officer have to go to a DA, and she says no. But she says, well, it's the normal procedure without a citation in the record. But I think the whole point of Nieves was we weren't going to go down this road. We lost on a motion to dismiss. Can I ask about Justice Gorsuch's question because I think that's important. And maybe I'm looking at it the wrong way. But I assume people who intentionally engage in this conduct are prosecuted all the time, generally speaking, namely intentionally stealing government documents, intentionally removing government documents, et cetera, intentionally obstructing government proceedings. People who accidentally take a document are never prosecuted, presumably put aside what crimes. I think the government said look at the conduct, not the crime. We agree. So how do we assess that at this stage when they're alleging they did it unintentionally and they would have a good case if that were in fact true. But the police officer said there's probable cause that she did it intentionally. She intentionally stole. How do we assess that? Because I think Justice Gorsuch's question goes it's correct if it's unintentional, but I don't think it's correct if it's intentional. So in the weeds, that's why you need comparators. But at a higher level, it is why we're making the argument that this will happen in every case if you extend it beyond cases where police don't typically arrest. Because every assault case will be I was, you know, every looting case will be I didn't, I took a toothbrush or I didn't, you know, I don't know how that ring got in my bag or I left the party as soon as the cocaine came. And the officer will say, you know, no, I saw you with it. And we'll be debating, I don't know, I think half of you will say that should go to a jury  How can they kind of enforce the law in this type of environment? I would say if you're going to do comparators, you have to look at the comparators that's alleged in the warrant application. The problem is you might not have a warrant application in all kinds of cases. If it's a warrantless arrest, all you're going to have is the complaint. And the complaint says I'm innocent. What about the kind of crimes the government was talking about, like unlawful assembly and those kinds of crimes where, you know, you intentionally do it, you've intentionally gathered, you've intentionally blocked streets. Yeah, have at it. That is Nieves. That is the hard core. That should be easy to allege, and we agree with a lot of the government's examples about comparators. You could use yourself as a comparator on a previous occasion. If you're the only journalist arrested for assembly, that kind of stuff, I thought that was the point of Nieves. That should go. Like protest cases. Protest cases, not theft cases, not assault cases, not insider trading or tax fraud or political corruption. I mean, I really would advise every criminal to put a political bumper sticker on their car. I guess I was, I thought that the part, I thought that the point of Nieves was if you have solid objective evidence that you're in a world in which you were arrested for something that somebody who hadn't engaged in your speech activities would not be arrested for, that you should be able to present that evidence to get over the probable cause bar. Yes. So here's a hypothetical. Suppose that there were two videos in this case. Two videos. The second video is of a meeting with all the relevant officials, and they're all talking about how they can get back at Ms. Gonzalez. And they say, hey, why don't we do this investigation? We'll go arrest her. We'll go, you know, because she moved this piece of paper. And they all agree to that. Are you saying that that can't come in to get over the probable cause bar, Nieves? No, that's a Lozman claim, and there is a Lozman claim pending against the city. Well, it's not a Lozman claim against the city. It's the same defendants here. Oh, it's just officers agreeing? Yeah, it's the same defendants, but there they all are on videotape agreeing how they're going to retaliate against Ms. Gonzalez. That was the Nieves complaint, is officers Waite and Bartlett. I hope I have their names right. Nieves and Waite were conspiring to get this person. And so you just didn't have them on videotape. Yeah, well, now you have them on videotape. That seems like pretty good objective evidence to get you over the probable cause bar. I mean, I guess what I'm suggesting is that the point of this probable cause bar is we don't want every old allegation of like, you know, they had a bad intent and they were trying to look at, but if you have solid objective evidence that you were being treated differently from another person in your situation, that that solid objective evidence should, and part of that might be comparative in the way that you're suggesting, but there might be other things too. I mean, the problem is this is a poster child. There is absolutely nothing in the complaint that suggests that either the chief of police or this police officer had any reason to even know who this woman was or her speech. You're fighting the facts. But that's what the case is going to cover. Justice Kagan's asking a hypothetical question. I'd be grateful if you'd answer it. Sure. The problem with this anything goes. It's good I have an enforcer. Anytime. Because I can let you get carried away doing all this other stuff. And your question is excellent. And it was a good one. It was. Because you're a good advocate. An advocate is going to hire you or somebody like you who's going to say my evidence is really good. Look how these people were out to get me. I'm an unpopular figure. This is a small town. I didn't like the road construction. No, now you're still fighting. Okay, on your other hypo. You don't need an enforcer. Any hypothetical, it is going to be I was picked on. And I'm going to be able to cite any evidence that's anything but, I guess, an officer's subjective statement. Yeah, because that's the only thing you specifically ruled out. And the court, I think, said very clearly only comparator evidence. Once you have a similarly situated person who's not engaged in. Well, look, you don't have to, from my videotape, you do not have to make a very long leap of inference to say, oh, that's comparative. You know, this videotape is like, let's go get Ms. Gonzalez. You don't have to say, and we wouldn't have gotten everybody else. It's obvious on its face that this is treating Ms. Gonzalez differently. And what I'm concerned about is the next hypothetical where the plaintiff, like Inieva, says that officer said to me, you know, I was out to get you. Or I'm so glad, you know, it's time to arrest you. I've been waiting. I mean, we all know that the government. I mean, now you're just, you're going to the statements that obviously are not coming in underneath us because they're just statements that the officer made. But you have them on videotape, right? Reflecting his state of mind at the time. So. Is it the only, I'm sorry, maybe I understood your hypo. Isn't it only because there's a videotape of the officer's statements? Well, it's, it's, it's, it's, it's pretty clear objective evidence that a judge can look at. Which makes it clear that this Ms. Gonzalez was picked on because she was doing what the First Amendment allows her to do. I worry that if you write an opinion that says only that evidence is okay, if you've got the officer on videotape, that's fine. I worry where you're going is anything that I, as a judge, think is pretty relevant that she was picked on. That's what scares me and that's what scares me representing police officers. Who literally, you know, are trying to work to get the community to trust them and do their job and don't, you know, have the smear campaigns every time they're sued. The presence or absence of the videotape would be important if the case actually goes to trial. But prior to that, I really don't see why that changes the situation. So whether you have a videotape that shows that they really were conspiring to get a particular person, or all you have is an allegation by the person who was arrested that the arresting officer said the only reason why I'm arresting you is because the mayor told me to do it. For purposes of a motion to dismiss or summary judgment, it seems to me they count just as much as the videotape. It's just not as persuasive, perhaps in the end. Now you're my enforcer, I think. No, I'm not trying to be your enforcer, but I don't mean that. You don't need my advice. I think you're saying that's helpful, that every complaint can allege, you know, the officer said something. Or, you know, I mean, Mayor Berry said, you know, he showed up at that Vista Hotel to meet his girlfriend for sex, not the drugs. And the FBI was clearly out to get him. And you didn't know that he did anything wrong until you watched the videotape. Well, what about these two situations? So there's a protest. And one of the protesters is six foot five and weighs 250 pounds and used to be a linebacker in college and gets into an argument with a police officer about something and pushes the police officer. The police officer arrests him, charges him with assault, which is a felony. All right, that's, well, I'll continue. Go ahead. All right, then at another protest, the protester is a frail elderly person who weighs 90 pounds and is arrested for assaulting the officer because this person pushed the officer with whatever strength that arrestee has. I mean, in the latter situation, and is charged with assault. What would be the comparator in that situation? You have to find another situation where there's a person of similar stature? No. No, I would loosen that. Literally, our comparator in this case, had she fled it, could have been anyone who intentionally takes government documents. It didn't have to be even a city official. It didn't have to be what kind of document. Again, I would never put this on assault, because every case will be, I just elbowed, everyone else was punching, and I was the only one arrested. But assuming it's going to do assault, it's easy to allege a comparator. Everyone at the bar was throwing punches, and I was the only one wearing my T-shirt that said, I hate the police. You meet the comparator requirement easily. All right, thank you. Thank you. Justice Thomas, anything further? Thank you. Kevin? Justice Jackson? Thank goodness. Thank you. Thank you, Counselor. Rebuttal, Ms. Bidwell? I have four points to make. First point is, I think it's very important to look at the two questions presented in context of each other. If you are saying that Nieves covers the vast bulk of cases, which are the cases where police officers are making on-the-spot arrests, for example, during protests, during Arctic events, festivals, when they are responding to domestic violence calls, that's the vast bulk of police cases. If you say that Nieves only covers that, then when you talk about objective evidence carve-out, the exact example of a comparator might actually make sense, because then you can have a comparator, for example, during a protest. But if you are including mayors into the general Nieves police arrest framework, that it is very important that objective evidence carve-out is not just limited to examples of non-arrest, especially as respondent argues, they say, we should have irrebuttable presumption with warrants. So then mayors get an irrebuttable presumption with warrants, and the only people who are going to be sued for First Amendment retaliation will be police officers protesting events under the endemic crime similarly situated exception. So it's important to keep those two perspectives in terms of question presented one and question presented two. And Justice Sotomayor, on your question about data, National Police Accountability Project, on page 24 up there, amicus talk about how there is no floodgates after the Seventh Circuit and the Ninth Circuit's interpretation of the carve-out. They say that there were only 178 cases overall analyzed, and only 17 cases out of those 178 proceeded to pass motion to dismiss or motion for summary judgment. And finally, I'd just like to mention that political retaliation is dangerous. First Amendment has to mean something. Mayors should not be allowed to launder animus through warrants. Common law understood that, and we respectfully ask that the court understand that, too. Thank you. Thank you, counsel. The case is submitted.